Marie and Donald **DUCHARME**,
Plaintiffs-Appellants,

v.

**MERRILL–NATIONAL LABORATORIES, and United States of America, Defendants-Appellees.**

No. 77–3488
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

June 14, 1978.

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

J. Minos Simon, Lafayette, La., for plaintiffs-appellants.

Edward L. Shaheen, U. S. Atty., Shreveport, La., Jeffrey Axelrad, Leon B. Taranto, Civ. Div., Dept. of Justice, Washington, D. C., for United States of America.

Before RONEY, GEE and FAY, Circuit Judges.

PER CURIAM:

We affirm the judgment below on the basis of the district court's memorandum opinion appended.

AFFIRMED.

## APPENDIX

(Title Omitted)

No. 770,452

### RULING ON MOTIONS

Plaintiffs filed this diversity action against Merrill-National Laboratories for injuries resulting from an adverse reaction to a swine flu vaccine. The basis of their cause of action is Louisiana Civil Code Article 2315.

The United States filed motions under the Swine Flu Act (42 U.S.C. § 247b) to dismiss for failure to exhaust administrative remedies, to substitute United States as sole defendant and an additional motion to stay discovery pending outcome of hearing on the motions.

Plaintiffs oppose the government motions alleging: (1) the Swine Flu Act is in violation of the due process clause of the 5th and 14th Amendments in that it abrogates plaintiffs' cause of action under Article 2315 for damages against the manufacturer; (2) the Swine Flu Act, which incorporates the Federal Tort Claims Act, violates plaintiffs' right to a jury trial.

Constitutional attacks on the Swine Flu Act, similar to the attack being made here, have been made in at least three district courts.[1]

The courts, in all three of the above cases, upheld the constitutionality of the Swine Flu Act.

The Swine Flu Act basically:

1. Creates a cause of action against the United States based on negligence, strict liability or breach of warranty for damages arising out of the act of a program participant;[2]

2. provides that the cause of action against the United States arising out of the administration of the swine flu vaccine shall be exclusive of any civil action against the program participant, 42 U.S.C. § 247b(k)(3);

3. incorporates provisions of the Federal Tort Claims Act (42 U.S.C. § 247b(k)(1)(B) including (a) no right to jury trial (28 U.S.C. § 2402), (b) two year prescription (28 U.S.C. § 2401(b), and (c) requirement of first exhausting an administrative remedy (28 U.S.C. § 2675); and

4. affords the United States the right to seek indemnity from the program participant on the basis of negligence or breach of contract in connection with the swine flu program. 42 U.S.C. § 247b(k)(7).

The cause of action provided by the Swine Flu Act to an injured person against the United States is substantially the same as that afforded against the manufacturer under Louisiana Civil Code Article 2315 except that under the Swine Flu Act no trial by jury is afforded and the plaintiff is required to seek first administrative review of his claim.

### DUE PROCESS CLAIM

■ It is well settled that a plaintiff has no vested right in any tort claim for damages under state law. *Keller v. Dravo Corporation*, 441 F.2d 1239 (5th Cir. 1971), up-

**1.** *Wolfe v. Merrill National Laboratories*, 433 F.Supp. 231 (M.D.Tenn.1977); *Sparks v. Wyeth Laboratories, Inc.*, 431 F.Supp. 411 (W.D.Okl. 1977); *Stephens v. Wyeth Laboratories, Inc.*, No. 77–L–0274–S (W.D.Ala., June 3, 1977).

**2.** Program participant is defined as a manufacturer or distributor of swine flu vaccine. 42 U.S.C. § 247b(k)(2)(B).

held the exclusive remedy provision of the Longshoremen's & Harbor Workers' Compensation Act against a due process challenge. The Court in *Keller* noted that the "abolition of non-vested rights is especially innocuous if . . . one remedy is substituted for another." (441 F.2d at 1242). Legislation has even been upheld where no remedy was substituted in place of the cause of action that was taken away. For example, in *Carr v. United States*, 422 F.2d 1007 (4th Cir. 1970), the Court upheld the constitutionality of the Federal Drivers Act (28 U.S.C. § 2679) which abrogated a federal employee's cause of action against a fellow employee. The Court in *Silver v. Silver*, 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221 (1929) upheld the abolition of a guest passenger's action against the host driver for negligence. In *Brady v. Roosevelt Steamship Co.*, 317 U.S. 575, 63 S.Ct. 425, 87 L.Ed. 471 (1943), the Supreme Court recognized the congressional power to grant immunity from tort liability to private operators of government vessels, and in so doing paved the way for the enactment of the Suits in Admiralty Act, 46 U.S.C. § 745.

Plaintiffs rely on *Richmond Screw Anchor Co. v. United States*, 275 U.S. 331, 48 S.Ct. 194, 72 L.Ed. 303 (1928) for the proposition that congress may never validly divest a private litigant of a civil cause of action. The identical argument was made in *Carr v. United States* and disposed of in the following manner:

"There the Supreme Court dealt with statutes whose combined effect deprived a patent owner of his right to sue for infringement. But the patent in that case had been issued prior to the enactment of the relevant legislation. There was, therefore, a vested right in being which was sought to be abrogated." (422 F.2d at 1010–11)

Plaintiffs' cause of action against the manufacturer did not arise until after passage of the Swine Flu Act. Plaintiffs had no prior vested right in a cause of action under Louisiana Civil Code Article 2315.

## TRIAL BY JURY CLAIM

Plaintiffs allege that the Swine Flu Act deprives them of equal protection of the law by allowing the manufacturer a trial by jury of the indemnity claim of the United States but denies trial by jury of their own claim. Plaintiffs contend that they and the manufacturer fall in the same general classification under the Act and they should be treated alike with respect to their right to trial by jury.

While the equal protection clause of the 14th Amendment has no application against the United States, the 5th Amendment does prohibit discrimination that is "so unjustifiable as to be violate of the due process."[3] In the area of social and economic welfare, in order to meet due process standards the classification created under the statute must be reasonable, not arbitrary and bear some rational relationship to legitimate congressional goals.[4]

I am unable to find that the disparity in treatment between plaintiffs and manufacturer with respect to jury trial is so unrelated to the object of the statute as to be arbitrary.

Congressional purpose is set forth in the Act, 42 U.S.C. § 247b(k)(1)(A):

"(i) . . . to achieve the participation in the program of the agencies, organizations, and individuals who will manufacture, distribute and administer the swine flu vaccine . . . and to assure the availability of such vaccine in interstate commerce . . .

(ii) . . . to establish an orderly procedure for the prompt and equitable handling of claims . . .

(iii) to be prepared to meet the potential emergency of a swine flu epidemic . . ."

Congress found it necessary to insulate manufacturers from primary liability and provide an exclusive remedy against the United States due to the collapse of the

---

3. *Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954).

4. *Richardson v. Belcher*, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971).

commercial liability insurance market. Legislative history reflects that insurance companies refused to insure drug manufacturers for interstate distribution of the vaccine due to the potential for a large number of meritless claims with attendant costs of investigation and defense and recent federal court decisions holding drug manufacturers strictly liable for failure to warn of possible adverse drug effects. While the Swine Flu Act is drafted to provide immunity to manufacturers from primary responsibility, the Act affords the United States the right to indemnity on the bases of negligence and breach of the contractural obligation. For this limited risk to drug manufacturers insurance was available.[5]

The United States also recognized some potential liability due to their "unique role in the initiation, planning, and administration of the swine flu [vaccine]." 42 U.S.C. § 247b(k)(1)(A)(ii). By making a claimant's remedy exclusive against the United States but allowing limited indemnity by United States against the manufacturer, Congress struck a balance between plaintiff's interest in preserving a tort remedy and the manufacturer's interest in obtaining insurance coverage.

Congress is not denied the power to "treat different classes of persons in different ways," but it is denied power to "legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute."[6]

I conclude that the procedure established under the Act is rationally related to achieving the goal of assuring interstate distribution of the swine flu vaccine.

Plaintiffs make the additional argument that the Act violates their 7th Amendment right to trial by jury.

Although the 7th Amendment preserves the right to trial by jury of suits at common law, it is settled that suits against the United States, requiring waiver of sovereign immunity, are not "suits at common law" within the meaning of the 7th Amendment. When the sovereign waives immunity it may attach any conditions (including no right to trial by jury) to its consent.[7]

## CONCLUSION

I conclude that the Swine Flu Act represents a valid exercise of Congressional power under the Constitution. Accordingly, the motion of the United States to be substituted as sole defendant under the terms of the Act is granted.

The administrative procedure required under the Federal Tort Claims Act is jurisdictional and cannot be waived. *Executive Jet Aviation, Inc. v. United States*, 507 F.2d 508 (6th Cir. 1974). However, under the Swine Flu Act, if a suit is dismissed for failure to file an administrative claim, the plaintiff is given 30 days from the date of dismissal or two years from the date the claim arose in which to file an administrative claim. Therefore, the Government's motion to dismiss without prejudice to plaintiff is granted.

Lafayette, Louisiana, this 1st day of December, 1977.

/s/ W. Eugene Davis
Judge, United States District Court

Filed
Dec. 2, 1977.

---

5. *See Cong.Rec. E 4695–4707*, August 12, 1976. Debate in both chambers appears at *Cong.Rec. H 8643–8655 and S 14108–14122*, August 10, 1976.

6. *Reed v. Reed*, 404 U.S. 71, 75–76, 92 S.Ct. 251, 253, 30 L.Ed.2d 225 (1971); *Johnson v. Robison*, 415 U.S. 361, 374, 94 S.Ct. 1160, 1169, 39 L.Ed.2d 389 (1974).

7. *Glidden Company v. Zdanok*, 370 U.S. 530, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962); *United States v. Sherwood*, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); *Nistendirk v. McGee*, 225 F.Supp. 881 (W.D.Mo.1963).