410 So.2d 170 (1982)
Tom GRIFFIN, As Guardian of the Property of Eddie Gene Griffin, a Mental and Physical Incompetent, Appellant,
v.
CITY OF QUINCY and United States Fidelity & Guaranty Company, Appellee.
No. ZZ-71.
District Court of Appeal of Florida, First District.
January 11, 1982.
Rehearing Denied March 11, 1982.
*171 Jackson G. Beatty and M. Stephen Turner of Culpepper, Beatty & Turner, Tallahassee, for appellant.
Alexander L. Hinson of Lines, Hinson & Lines, Quincy, for appellee City of Quincy.
Jeffries H. Duvall of Duvall & Coulter, Tallahassee, for appellee U.S. Fidelity & Guaranty Co.
JOANOS, Judge.
After considering the numerous issues raised in the appeal and cross-appeal, we affirm on all points.
The evidence reflects the following. On June 10, 1976, Eddie Gene Griffin was on a tall ladder painting the roof of a two story house. He was using a roller hooked onto a thirteen foot aluminum pole. The pole came into contact with an uninsulated power line running about 6.5 feet from the eave of the house. Griffin suffered severe electrical shock and fell from the ladder onto the sidewalk.
Griffin sustained numerous injuries from the accident and became a physical and mental incompetent. His appointed guardian brought an action in his behalf against the City of Quincy and its insurance carrier, United States Fidelity & Guaranty Company. The complaint alleged that the City, as the seller and distributor of electricity, negligently placed the power lines too close to the house when other alternative routings were more feasible and less dangerous; that the City knew, or should have known that workmen would come into close proximity with the lines; that the lines were dangerous; and that the City failed to "insulate, isolate or guard its lines." Motions of defendants to dismiss and for summary judgment were denied by the trial court and the case proceeded to trial.
At trial, the City presented evidence indicating that the overhead distribution lines of the City of Quincy were designed and installed with the assistance of professional electrical engineers; that the City has some 29 miles of overhead, uninsulated primary distribution lines, and that none of these lines are insulated because it would bring about increased wire size, overheating and exorbitant costs; that they did not know when the line in question was installed but that it was several decades ago; and that the line met safety code requirements for minimum clearance and was in complete accordance with plans and specifications recommended by the consultants.
The jury found the City to be 90% negligent and Griffin 10%. The total amount of damages was set at $3 million. The trial court denied various post trial motions but granted the City's motion to limit the judgment pursuant to Chapter 73-313, Florida Statutes, Section 768.28. Pursuant to that statute as it read at the time of the accident, June 10, 1976, the Court's order limited Griffin's recovery to the available insurance coverage maintained by the City at the time. Further, the trial judge specifically found the statute to be constitutional. Therefore, final judgment was entered in favor of plaintiff in the amount of $2.7 million, but recovery was limited to $300,000, the amount of insurance coverage maintained by the City. Plaintiff's motion to tax costs was granted and approximately *172 $17,000 in costs were assessed in addition to the $300,000 award.
The plaintiff below appealed. The defendants City and United States Fidelity and Guaranty Company, the City's carrier, separately cross-appealed.
On appeal, appellant Griffin has argued that Chapter 73-313 does not limit or otherwise affect the right to full recovery for the negligence of a municipality in its performance of a "proprietary" function since these rights existed at common law and were never recognized as coming within the purview of sovereign immunity. Thus, appellant contends that an interpretation of § 768.28 which limits these rights would be an unconstitutional denial of equal protection and access to the courts. However, these arguments must be rejected as they were laid to rest in the recent cases of Cauley v. City of Jacksonville, 403 So.2d 379 (Fla. 1981) and Jetton v. J.E.A., 399 So.2d 396 (Fla. 1st DCA 1981).
Appellant further argues that Chapter 73-313 cannot limit common law rights against municipalities because its title does not provide adequate notice of any such limitation. He asserts that the subject of the act is that claims against the state and its subdivisions are being authorized and that there is nothing indicating that immunity is being created for municipalities. However, a reading of the title to Chapter 73-313 appears to be sufficient to give fair notice of its contents, which would lead to inquiry into the body of the act. See Pruitt v. State, 363 So.2d 552, 554 (Fla. 1978). In addition, because of the Florida Supreme Court's finding in Cauley that there was no statutory right to recover for a municipality's negligence predating the adoption of the declaration of rights in the Florida Constitution, nor was there a common law cause of action when this Country gained its independence, appellants' argument that the title does not give notice that it is destroying any common law rights fails.
On cross-appeal, Fidelity argues that the trial court erred in denying defendants' motion to dismiss, since plaintiff not only failed to allege waiver of sovereign immunity and his intentions to proceed under § 768.28, but has maintained throughout that this case does not fall within the provisions of the statute and no need existed to affirmatively allege waiver of sovereign immunity. We fail to find any reversible error on this point. First, such an omission in the pleading would not have required a dismissal with prejudice, and appellant could simply have refiled his complaint. Commercial Carrier Corp. v. Indian River City, 371 So.2d 1010, 1022-1023 (Fla. 1979). Second, the record reflects that the question of sovereign immunity was thoroughly litigated below and Fidelity was not prejudiced in any way by the deficiency in the pleading. In reducing the damages recoverable, the trial judge applied the pertinent principles pertaining to sovereign immunity.
Appellees Fidelity and the City argue that the alleged negligent activities remain immune by law from tort liability because they are discretionary in nature. The question involved on this point is whether the planning and design of an electrical system falls within the operational or planning functions of a municipality which remain immune under the principles set forth in Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979). In Commercial Carrier the Florida Supreme Court held that despite the broad waiver of sovereign immunity contained in § 768.28 certain "discretionary" governmental functions remained immune. The reason given was that the wisdom involved in certain governmental decisions should not be subjected to second-guessing by judges or juries. In identifying the activities that are immune, the Court adopted the analysis set forth in a California case, Johnson v. State, 69 Cal.2d 782, 73 Cal. Rptr. 240, 447 P.2d 352 (1968), which distinguished between the "planning" and "operational" levels of governmental decision making. The Court indicated that a case-by-case analysis must be made in determining which governmental functions are immune. In making that analysis, the Court indicated that the analysis should begin with the four-question test *173 set forth in the Washington case of Evangelical United Brethren Church v. State, 67 Wash.2d 246, 407 P.2d 440 (1965). According to that test if the following four questions are all answered in the affirmative, the activity in question should be classified as immune:
(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective?
(2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program or objective as opposed to one which would not change the course or directions of the policy, program, or objective?
(3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved?
(4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission or decision?
However, if one or more of the questions brings a negative answer then according to the procedure further inquiry might be necessary dependent upon facts and circumstances. Turning to the situation before us, we find that the trial court was correct in finding that the first of the four-part test was not met in that the activities did not involve a "basic governmental policy, program or objective." The operation of an electrical system is not a traditional "governmental" function. Further, there is nothing in the facts or circumstances of the situation here that requires a finding of immunity. A "basic governmental policy, program, or objective" in the circumstances here would have been the decision of whether or not the City should go into the business of providing electricity to its residents. This is the type of "quasi-legislative" decision which, according to Commercial Carrier, remains immune. However, the implementation of the "policy, program or objective" to provide electricity is an operational level function and the City is not immune from tort liability for its negligence in this area.
Appellees City and Fidelity have also argued that the trial judge was in error in his limitation of the judgment in applying the provisions of § 768.28, Florida Statutes, as they existed at the time that the cause of action accrued rather than as they existed when the judgment was entered. The appellees moved the trial court to limit the judgment as provided in § 768.28(5), Florida Statutes (1979) which would have limited the judgment according to the $50,000/$100,000 limitation. The trial court instead applied § 768.28(10), Florida Statutes (1975) and entered judgment in the amount of $300,000, the amount of insurance coverage maintained by the City at the time of the accident. Appellees assert that the clear words of subsection (5) are that the damage limitation to be applied is the one in existence at the time the judgment is entered, otherwise the statute would have no practical application. We have determined that the trial court was correct in applying the statute that was in effect at the time appellant's cause of action accrued. Retrospective application of the statute would adversely affect appellant's right to recover the policy limits of the City's insurance, which right vested when appellant suffered the injury. Thus, the statute in existence at the time of the incident should be applied. See McCord v. Smith, 43 So.2d 704 (Fla. 1950).
Appellee Fidelity has urged us to reconsider this Court's opinion in State v. Yant, 360 So.2d 99, 101 (Fla. 1st DCA 1978) in which it was held that the statutory limitation in § 768.28 does not apply to costs and costs may be taxed in addition thereto. Appellee points out that in Berek v. Metropolitan Dade County, 396 So.2d 756 (Fla. 3d DCA 1981) a contrary position was taken. We have examined that case but have determined that no compelling reason exists for us to recede from the Yant decision.
AFFIRMED.
ROBERT P. SMITH, Jr., C.J., and THOMPSON, J., concur.