JOANOS, Judge.
The issue on appeal is whether this negligence suit against the City of Gainesville is precluded by the doctrine of sovereign immunity. The claim arises out of the City’s role as á provider of electricity.
On December 18, 1978, appellant Hardie was seriously injured when he came into contact, apparently through his metal measuring tape, with an uninsulated 7200 volt overhead electrical distribution line which crossed directly over the corner of the roof on which appellant was working. He was putting shingles on the roof of a new two story duplex on Lot 6 in the Phoenix subdivision. The subdivision, under development at the time of this accident, consists of some 83 buildings, of which 65 are two story, The City, as owner of the overhead distribution system, had determined to replace the overhead lines with an underground distribution system. In the meantime, the overhead system would remain in place.
When the City purchased this overhead electric distribution system from Florida Power Corporation in 1974, the property underneath was undeveloped and the system met minimum safety clearance requirements. At the poles, the lower line was about thirty feet high. At midspan it was about twenty-five feet high. The upper line was about twenty-five inches higher than the lower line. On December 18, 1978, the lower, deenergized line touched the corner of the roof of the duplex on Lot 6.
In September 1978 the subdivision developer sought a release of the blanket utilities easement on the area because of title difficulties in selling the lots. The City granted a quit claim deed accompanied by a verbal understanding that the overhead lines would not be removed until the underground system was completed. In September or October, 1978, however, the developer notified the City of a problem with the construction in the northwestern part of the subdivision due to the presence of electrical lines directly overhead. The City advanced the schedule for building a new overhead line along the northern boundary of the property and removed the problem line over the northwestern construction. A city electric representative again told the developer that the remaining overhead lines would remain in service until the underground system was completed.
The remaining distribution liné crossed Lot 6, located on the eastern side of the subdivision. As of November 2, 1978, the developer had sold Lot 6 to a builder, Ross. Various inspections of the work on Lot 6 occurred in November, 1978. City electric crews were in the subdivision frequently in October, November, and December, 1978. On two occasions, city electric workers *396 warned construction workers about energized overhead lines. These incidents occurred on lots 35 and 72. Lot 72 is across a street from Lot 6.
When construction workers set up roof trusses on Lot 6, they apparently realized the overhead line was energized. When one worker got close to the line, the hair on his arm stood up. In another incident workers heard an arc of current to a metal T-square one of them carried. They informed Ross, who called city utilities to inquire, but in the meantime workers continued to arrive on the site. Edge metal was applied and shingles were delivered to the top of the roof. The roofers, including appellant, arrived on December 18, 1978, to install shingles, and the accident occurred.
In the complaint, appellant alleged that the City negligently operated and maintained the overhead distribution lines by certain acts and omissions, including, but not limited to failing to: warn of the hazardous energized condition of the wires, keep the wires at a safe and proper distance from the building, remove dangerous wires, remove unnecessary wires, or de-en-ergize the wires, all of this in an area where the City knew or should have known building construction had been and was occurring, resulting in appellant’s severe electrical shock and subsequent injuries. The City moved for summary judgment based on sovereign immunity on the theory that the timing of removal of overhead wires and implementation of the underground system was a planning function. The trial judge initially denied the motion, but on its renewal at pre-trial conference, the trial judge granted the motion.
In the order granting summary judgment, the trial court found that the City’s determination to install the underground system and replace the overhead system, retaining the overhead system until the underground system was complete, was a judgmental, discretionary, planning level decision for which the City was immune from liability. The trial judge ruled further that this case did not fall within the exception to immunity for discretionary activities arising when the governmental entity creates a known dangerous situation not apparent to others for which there is a duty to warn, because the City did not create the dangerous situation and the power lines were not hidden, obscured or unknown to the appellant.
The arguments on appeal focus on the question whether this case involves discretionary, planning level activity as opposed to operational activity under the analysis set forth in Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979), and if discretionary, whether the trial court correctly ruled that this case does not fit within the exception for creation of a known dangerous condition. We have concluded that the trial court was incorrect in finding the activity in this ease to be discretionary, planning level activity, therefore we have not considered the exception outlined above.
This court has previously determined that “the implementation of the ‘policy, program or objective’ to provide electricity is an operational level function” for which a city is not immune from tort liability, Griffin v. City of Quincy, 410 So.2d 170, 173 (Fla. 1st DCA 1982). In reviewing the present case we have considered whether, as appellees contend, subsequent Florida Supreme Court cases on the issue of sovereign immunity, particularly the “Neilson trilogy” [1] and Trianon Park[2] cases, have effectively changed or overruled Griffin so that it is inapplicable here. We conclude that they have not.
In Griffin, this court analyzed the planning and design of an electrical system in light of the four part test recommended in Commercial Carrier and concluded:
*397 [T]he activities did not involve a “basic governmental policy, program or objective.” The operation of an electrical system is not a traditional “governmental” function. Further, there is nothing in the facts or circumstances of the situation here that requires a finding of immunity.
Correspondingly, the facts and circumstances in the present case do not require a finding of immunity. Furthermore, a significant difference exists between the present situation and the circumstances dealt with in the Neilson trilogy of traffic control cases: the latter cases involve the exercise of the police power by governmental entities.
Additional support for the conclusion reached in Griffin is provided in the Trianon Park case. There the supreme court set forth four categories of governmental functions. The first two, “Legislative, Permitting, Licensing, and Executive Officer Functions” and “Enforcement of Laws and Protection of the Public Safety,” do not lead to governmental liability “because there has never been a common law duty of care with respect to these legislative, executive, and police power functions, and the statutory waiver of sovereign immunity did not create a new duty of care,” 468 So.2d at 921. The third and fourth categories, “Capital Improvement and Property Control Functions” and “Providing Professional, Educational and General Services,” however, may give rise to “substantial governmental liability ... because there is a common law duty of care regarding how property is maintained and operated and how professional and general services are performed.” Id. Regarding “Capital Improvement and Property Control Functions,” under which the present case falls, the court said “once a governmental entity builds or takes control of property or an improvement, it has the same common law duty as a private person to properly maintain and operate the property.” Id.
Appellees contend the City’s decisions to change from an overhead to an underground system and simultaneously continue service to existing customers, and all determinations inherent in that decision, are discretionary, planning level activities. In the phrase “all determinations inherent in that decision” appellees mean to include the decisions to construct and install an underground distribution system, service existing customers without interruption, coordinate removal of the overhead lines with completion of the underground system, and all decisions about how to continue electrical service to existing customers in the interim.
Regardless of whether the basic decision to exchange the overhead distribution system for an underground system and the decision as to the timing thereof are discretionary, the duty to properly maintain and operate the existing system remains in effect, and under Griffin that duty involves operational activities for which there is no sovereign immunity. Therefore, summary judgment on the basis of sovereign immunity is reversed and the case is remanded for further proceedings in light of this opinion.
ERVIN and BARFIELD, JJ., concur.

. Department of Transportation v. Neilson, 419 So.2d 1071 (FIa.1982); Ingham v. Department of Transportation, 419 So.2d 1081 (Fla.1982); City of St. Petersburg v. Collom, 419 So.2d 1082 (Fla. 1982).

. Trianon Park Condominium Association v. City of Hialeah, 468 So.2d 912 (Fla.1985).