# Coverage Issues Under the Indian Self-Determination Act

The 1990 amendment to the Indian Self-Determination and Education Assistance Act of 1975 covers only those torts for which the Federal Tort Claims Act waives the sovereign immunity of the United States.

The 1990 amendment does not authorize or otherwise address representation of tribes or tribal employees who are sued in their individual capacities for constitutional torts

April 22, 1998

MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL
CIVIL DIVISION

This memorandum responds to the request of the Torts Branch for our opinion regarding the scope of the 1990 amendment to the Indian Self-Determination and Education Assistance Act of 1975. Specifically, we have been asked (1) whether actions other than common law torts are covered by the 1990 amendment to the Act, and (2) whether the 1990 amendment authorizes representation of tribes or tribal employees sued in their individual capacities for constitutional torts.

For the reasons explained below, we conclude that the 1990 amendment to the Act covers only those torts for which the Federal Tort Claims Act waives the sovereign immunity of the United States. We further conclude that the 1990 amendment does not authorize or otherwise address representation of tribes or tribal employees who are sued in their individual capacities for constitutional torts.

## I. Background

The Indian Self-Determination and Education Assistance Act, Pub. L. No. 93–638, 88 Stat. 2203 ("ISDA" or "Act"), was enacted in 1975 to further the goal of Indian self-determination by assuring maximum Indian participation in the management of federal programs and services for Indians. *See* 25 U.S.C. §§ 450, 450a (1994). The Act provides that tribes may enter into "self-determination contracts" with the Secretary of the Interior and the Secretary of Health and Human Services ("HHS") to administer programs or services that otherwise would have been administered by the federal government. *See* 25 U.S.C. § 450f(a) (1994). Such programs include education, medical services, construction, and law enforcement.

In carrying out self-determination contracts under the ISDA, tribes were faced with substantial, and apparently unanticipated, indirect costs, such as the cost of liability insurance (particularly medical malpractice insurance). As a result, the funds originally earmarked for these programs were viewed by tribes, and recognized by Congress, to be inadequate. *See* S. Rep. No. 100–274, at 9, 26 (1987). To address this problem, Congress amended the ISDA in two ways in 1987 and 1988. First, it provided that for "personal injury" claims arising from the perform-

ance of medical functions under self-determination contracts, tribes and tribal contractors would be deemed part of the Public Health Service in the Department of Health and Human Services, thus making the Federal Tort Claims Act ("FTCA") applicable to that class of claims. Pub. L. No. 100–202, 101 Stat. 1329, 1329–246 (1987) (codified as amended at 25 U.S.C. § 450f(d) (1994)). Second, Congress amended the ISDA to require the federal government to obtain liability insurance for Indian tribes, tribal organizations, and tribal contractors carrying out self-determination contracts. *See* Pub. L. No. 100–472, § 201(c)(1), 102 Stat. 2285, 2289 (1988) (codified at 25 U.S.C. § 450f(c)(1) (1994)). In 1989 and 1990, Congress enacted, and then reenacted on a permanent basis, the provision at issue here, providing that "any civil action or proceeding" against "any tribe, tribal organization, Indian contractor or tribal employee" involving claims resulting from the performance of self-determination contract functions "shall be deemed to be an action against the United States" and "be afforded the full protection and coverage of the Federal Tort Claims Act." Pub. L. No. 101–121, § 315, 103 Stat. 701, 744 (1989); Pub. L. No. 101–512, tit. III, § 314, 104 Stat. 1915, 1959–60 (1990).

## II. Actions Covered by the 1990 Amendment

The ISDA, as amended, provides in pertinent part:

> With respect to claims resulting from the performance of functions . . . under a contract, grant agreement, or any other agreement or compact authorized by the [ISDA] . . ., an Indian tribe, tribal organization or Indian contractor is deemed hereafter to be part of the Bureau of Indian Affairs in the Department of the Interior or the Indian Health Service in the Department of Health and Human Services while carrying out any such contract or agreement and its employees are deemed employees of the Bureau or Service while acting within the scope of their employment in carrying out the contract or agreement: *Provided*, That after September 30, 1990, any civil action or proceeding involving such claims brought hereafter against any tribe, tribal organization, Indian contractor or tribal employee covered by this provision shall be deemed to be an action against the United States and will be defended by the Attorney General and be afforded the full protection and coverage of the Federal Tort Claims Act . . . .

25 U.S.C. § 450f note (1994).[1]

---

[1] Pub L No 101–512, tit III, § 314, 104 Stat. 1915, 1959–60 (1990), as amended by Pub L No 103–138, tit. III, § 308, 107 Stat. 1416 (1993).

The first question to be addressed is whether the amendment's phrase "any civil action or proceeding involving such claims" refers only to common law tort actions or, instead, to a broader class of civil actions.[2] If it refers to all civil actions arising from the performance of ISDA functions by tribal entities, then any such action—including a contract action or a constitutional tort action—will be "deemed" an action against the United States and defended by the Attorney General under the amendment's proviso. If, on the other hand, the phrase refers only to common law tort actions, then the 1990 amendment has no effect on contract and other actions brought against tribal entities carrying out ISDA contracts.

## A. The Statutory Language

"Interpretation of a statute must begin with the statute's language." *Mallard v. United States District Court*, 490 U.S. 296, 300 (1989). At first blush, the language of the amendment appears to provide for broad coverage of civil actions. In particular, the proviso's language that *"any civil action or proceeding . . . shall be deemed to be an action against the United States"* seems literally to call for substitution of the United States in *any* civil action, whether based on state, federal, or tribal law, and whether based on contract, tort, or statute.

Other language in the amendment, however, arguably suggests a more limited scope of coverage. In particular, the phrase "any civil action or proceeding" must be read in conjunction with the phrase "full protection and coverage of the Federal Tort Claims Act." *See King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) (stating the "cardinal rule" that a "statute is to be read as a whole"). Providing that a "civil action" be "afforded the full protection and coverage of the Federal Tort Claims Act" presumably suggests that the FTCA, 28 U.S.C. §§ 1346(b), 2671–2680, (1994 & Supp. III 1997), has some operative effect in allowing an action that would not otherwise be maintainable. The FTCA, however, waives the sovereign immunity of the United States only for certain tort claims under state law.[3] It does not address contract actions or any actions based on federal law. The statutory reference to FTCA "protection and coverage" therefore would seem to be meaningless to the extent that the statute covers contract actions and

---

[2] There are a number of possibilities as to what the class of covered civil actions could encompass. It might include (1) any action that is civil in nature, regardless of the type of claim or source of law, (2) any tort action, including constitutional tort actions, or (3) tort actions that are covered by the FTCA (essentially common law tort actions)

[3] This category includes (with certain exceptions set forth in 28 U.S.C.§ 2680):

> claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred

28 U S C. § 1346(b)(1) (Supp III 1997) The phrase "law of the place" has been interpreted to mean "law of the State " *Federal Deposit Ins Corp v Meyer*, 510 U.S 471, 478 (1994).

actions under federal law. *See* 2A Norman J. Singer, Sutherland Statutory Construction § 46.06, at 119 (5th ed. 1992) (statute should be construed to give meaning and effect to each term).

These interpretive issues support a conclusion that the statutory language is ambiguous. Accordingly, we turn next to the legislative history of the 1990 amendment to ascertain the intention of Congress. *See, e.g., Toibb v. Radloff,* 501 U.S. 157, 162 (1991) (legislative history should be consulted if statutory language is ambiguous).[4]

## B. Legislative History

Although the legislative history of the 1990 amendment itself is relatively sparse, the history of the series of amendments leading up to the 1990 amendment is instructive. *See Bailey v. United States,* 516 U.S. 137, 147–48 (1995) (examining amendment history to interpret statutory language). As noted above, the amendment grew out of the crisis faced by tribes in meeting the high costs of liability insurance, particularly medical malpractice insurance, in carrying out ISDA contracts. *See* S. Rep. No. 100–274, at 9, 26. Thus, Congress in 1987 provided that, for "personal injury" claims arising from the performance of *medical* functions under ISDA contracts, tribes and tribal contractors would be deemed federal government entities, making the FTCA applicable.[5] It is fairly clear from the language ("personal injury") and legislative history of the 1987 amendment that it was intended to cover only tort claims cognizable under the FTCA.[6] It

---

[4] Of the few reported decisions making reference to the 1990 ISDA amendment, none has squarely addressed the scope of civil actions covered by it Dicta in two decisions, however, lend some support to an interpretation of the amendment as covering only tort claims cognizable under the FTCA *See Val-U Const Co v United States,* 905 F Supp 728, 732 (D S D 1995) (noting that classification of claim as "contract" or "negligence" claim is threshold issue in suit involving tribe's ISDA functions "because the FTCA waives sovereign immunity only for negligence claims"), *FGS Constructors, Inc v Carlow,* 823 F Supp. 1508, 1515 (D S D 1993) ("Pub. L No 101–512, § 314 extends the Court's jurisdiction *under the FTCA* to acts of Indian contractors taken in furtherance of contracts under the ISDEAA") (emphasis added), *see also FGS Constructors, Inc. v. Carlow,* 64 F 3d 1230, 1254 (8th Cir 1995) ("The ISDEAA limits the application of FTCA coverage to tort 'claims resulting from the performance of functions .  . under a contract, grant agreement, or cooperative agreement authorized by the [ISDEAA]'.") (citing § 314 of Pub L. No. 101–512).

[5] The 1987 amendment to the ISDA provided

> [W]ith respect to claims for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions,  . . a tribal organization or Indian contractor carrying out a contract, grant agreement, or cooperative agreement under [the ISDA] is deemed to be part of the Public Health Service in the Department of Health and Human Services while carrying out any such contract or agreement and its employees .  . are deemed employees of the Service while acting within the scope of their employment in carrying out the contract or agreement

Pub L No. 100–202, 101 Stat at 1329–246 (codified as amended at 25 U S.C § 450f(d))

[6] *See, e g.,* S. Rep. No 100–274, at 26 (amendment "provides that, for purposes of the Federal Tort Claims Act, employees of Indian tribes carrying out self-determination contracts are considered to be employees of the Federal Government"), *id.* at 27 ("The Committee amendment is not intended to expand the liability of the Federal Government to include claims for violation of statutory obligations not otherwise required of tribes "), *id* at 27–28 ("The amendment to the Act will not increase the Federal government's exposure under the Federal Tort Claims Act On the contrary, the amendment will only maintain such exposure at the same level that was associated with the operation of direct health care service programs by the Federal government prior to the enactment of the [ISDA] ")

is also noteworthy that one version of a related bill in the Senate included a provision that would have made the FTCA applicable to all functions performed by tribes under ISDA contracts—i.e., precisely what the 1990 amendment would provide if narrowly construed.[7] Congress also responded to the insurance-costs problem by providing in 1988 that the federal government would provide liability insurance for ISDA-contracting tribes. *See* Pub. L. No. 100–472, § 201(c)(1), 102 Stat. at 2289 (codified at 25 U.S.C. § 450f(c)(1)).[8]

The following year, Congress enacted an amendment containing the language at issue here, with the limitation that it applied to the performance of functions "during fiscal year 1990 only." Pub. L. No. 101–121, § 315, 103 Stat. at 744. The conference report explained:

> With regard to the liability insurance issue, as a temporary measure, the managers have included language in Title III of the Act *extending coverage under the Federal Tort Claims Act* to tribal contractors of both the Bureau [of Indian Affairs] ["BIA"] and the Indian Health Service ["IHS"]. In the interim, the managers expect the Bureau to work with the Indian Health Service and the Double Eagle, Inc. risk management group . . . and to provide a joint report to the Committee by February 1, 1990 identifying the costs and benefits of various liability coverage alternatives.

H.R. Conf. Rep. No. 101–264, at 33 (1989) (emphasis added); *see also id.* at 80 (amendment "expands the coverage of the Federal Tort Claims Act to the Bureau of Indian Affairs and the Indian Health Service for Indian contractors").

Finally in 1990 Congress made the amendment permanent by enacting section 314, title III, of Pub. L. No. 101–512, an appropriations act. It appears to have

---

[7] This provision stated

For purposes of chapter 171 and 1346 of title 28, United States Code [i e , the FTCA], a tribal organization carrying out a contract, grant agreement, or cooperative agreement under [the ISDA] shall be deemed to be a Federal Agency while carrying out such contract or agreement and its employees . . . are deemed employees of the United States while acting within the scope of their employment in carrying out the contract or agreement.

S Rep. No 100–274, at 72, *see also* 134 Cong. Rec. 12,856 (1988) The provision was removed from the bill on the floor of the Senate, without debate, in favor of retention of the more limited medical function provision *See id* at 12,860 (1988) The import of the above-quoted provision for purposes of construing the 1990 amendment is not entirely clear. On the one hand, it reveals that Congress, at least in 1987 and 1988, was contemplating coverage of tribes only for FTCA-covered tort claims. On the other hand, it suggests that Congress knew how to provide for such a limited scope of coverage with clarity in 1988, but arguably failed to do so in the 1990 amendment.

[8] This provision states.

Beginning in 1990, the Secretary shall be responsible for obtaining or providing liability insurance or equivalent coverage, on the most cost-effective basis, for Indian tribes, tribal organizations, and tribal contractors carrying out contracts, grant agreements and cooperative agreements pursuant to this Act. In obtaining or providing such coverage, the Secretary shall take into consideration *the extent to which liability under such contracts or agreements are* [sic] *covered by the Federal Tort Claims Act*

The final sentence, although somewhat cryptic, reveals Congress's awareness that FTCA coverage was being considered and that such coverage was also related to the insurance-costs problem

done so in response to BIA's and IHS's failure to issue the requested report. As the House report explained:

> The Committee has included language to make the *extension of Federal Tort Claims protection* to tribal P.L. 93–638 [ISDA] contractors permanent. It is unfortunate that the Department did not respond in a timely manner to the Committee's direction last year to undertake a study to show if other means of meeting the legal requirement for the Secretary to provide liability coverage for tribal contractors would be preferable. However, since the Department delayed taking action to respond to this directive, the Committee has no choice but to provide the required liability coverage on a permanent basis by *extending the Federal Tort Claims Act coverage.*

H.R. Rep. No. 101–789, at 72 (1990) (emphasis added); *see also id.* at 133 (amendment "make[s] permanent the extension of Federal Tort Claims protection to tribal contractors"). These references suggest that the committee's focus was on the extension of coverage specifically under the FTCA.

Although the validity of presidential signing statements as legislative history is controversial, *see The Legal Significance of Presidential Signing Statements,* 17 Op. O.L.C. 131, 135–37 (1993), we note that President Bush apparently interpreted the 1990 amendment narrowly. In noting his objection to the amendment, the President stated:

> The Act provides that Indian Tribes, tribal organizations, and Indian contractors and their employees shall be considered employees of the United States with respect to claims arising from contracts, grants, and cooperative agreements authorized by the [ISDA] . . . . *The effect of this provision would be to make the United States permanently liable for the torts of Indian Tribes, tribal organizations, and contractors.* This provision is fundamentally flawed because the United States does not control and supervise the day-to-day operations of the tribes, tribal organizations, and contractors.

2 *Pub. Papers of George Bush* 1558, 1559 (1990), *reprinted in* 1990 U.S.C.C.A.N. 3283–4, 3283–5 (Nov. 5, 1990) (emphasis added). The President's language suggests that he read the amendment to cover only tort claims. Presumably his objection would have been even stronger had he construed it to make the federal government liable for contract and other claims as well.

The one conclusion that emerges clearly from the legislative context and history is that Congress's focus was on extending FTCA coverage to ISDA-contracting tribes and tribal organizations (apparently in lieu of liability insurance). Testimony and statements made during hearings held in 1987, 1988, and 1990 similarly reflect an exclusive focus on extending FTCA coverage.[9] There is no indication in the legislative history (of either the 1990 amendment or its precursers) that Congress contemplated indemnification of tribes for contract claims or any other claims outside the scope of the FTCA (such as claims under federal law). The 1990 amendment grew out of an earlier provision (the medical-claim provision) that covers only FTCA torts. It followed Congress's consideration of a similar provision that clearly would have extended coverage only to FTCA torts. In the context of this history, the absence of any indication that Congress meant to extend coverage beyond the FTCA sphere is noteworthy. The legislative history therefore supports a narrow construction of the 1990 amendment as encompassing only claims that are cognizable under the FTCA.[10] *See Bob Jones Univ. v. United States*, 461 U.S. 574, 586 (1983) ("a court should go beyond the literal language of a statute if reliance on that language would defeat the plain purpose of the statute"); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 608 (1979) ("As in all cases of statutory construction, our task is to interpret the words of the[ ] statute[ ] in light of the purposes Congress sought to serve.").

---

[9] *See, e.g., Department of the Interior and Related Agencies Appropriations for 1991 Hearings Before the Subcomm on the Dept. of the Interior of the House Comm. on Appropriations*, 101st Cong 1038 (1990) (statement of Eddie F. Brown, Asst Secy. for Indian Affairs) (addressing language "to continue coverage of tribal contractors under the Federal Tort Claims Act"), *id* at 846 (letter of John Jemewouk, Chairman, Alaska Native Health Board, Inc ) (discussing "wisdom (financially and policy-wise) of using the FTCA in lieu of insurance"), *Indian Self-Determination and Education Assistance Act Amendments of 1987: Hearing on S 1703 Before the Senate Select Comm. on Indian Affairs*, 100th Cong 25–26 (1987) (statement of Lionel John, Executive Director, United South and Eastern Tribes) (discussing "the issue of the tort claims coverage" and "afford[ing] the tribes the ability to get the tort coverage that the Federal Government, in fact, enjoys in similar situations"), *Indian Self-Determination and Education Assistant Act, Public Law 93–638: Hearing Before the Senate Select Comm on Indian Affairs*, 100th Cong 34 (1987) (Sen Inouye, Chairman) (asking the extent to which indirect costs could be reduced "if tribes were afforded the same protection from tort liability Federal agencies enjoy under the Federal Tort Claims Act"), *id.* at 152 (statement of Sonosky, Chambers & Sachse on behalf of several tribes and tribal organizations) ("We also ask the Committee to consider extending FTCA coverage to the employees who work under 638 contracts with the BIA ").

[10] There is some legislative precedent for extending FTCA coverage to claims brought against entities that are not part of the federal government In. 1976, in response to an analogous insurance crisis faced by manufacturers of the swine flu vaccine, Congress provided that "personal injury" claims based on the vaccine "will be asserted directly against the United States under [the FTCA] " *Wolfe v Merrill Nat'l Labs, Inc*, 433 F Supp 231, 234 (M D Tenn 1977) (quoting Swine Flu Act, Pub L No 94–380, 90 Stat 1113 (1976)) Similarly, Congress has extended FTCA coverage to contractors carrying out atomic weapons testing *See* 42 U.S C § 2212(b)(1) (1994) ("The remedy against the United States provided by [the FTCA]   for injury, loss of property, personal injury, or death shall apply to any civil action for injury, loss of property, personal injury, or death due to exposure to radiation based on acts or omissions by a contractor in carrying out an atomic weapons testing program under a contract with the United States ") Although none of the few decisions under these provisions addresses whether they encompass only torts that are cognizable under the FTCA, at least one court appears to have assumed that the latter provision is limited at least to tort claims. *See Hammond v. United States*, 786 F 2d 8, 12–13 (1st Cir 1986) ("This is not the first time Congress has substituted the government as defendant in a certain category of *tort* suits and relegated plaintiffs to an FTCA remedy.") (emphasis added), *id* at 14 ("It was neither arbitrary nor irrational for Congress to change the law so as to place putative plaintiffs in the same position as any other party suing the United States *in tort* ") (emphasis added)

## C. Implications of Alternative Interpretations of the 1990 Amendment

In determining what Congress likely intended as to the scope of the 1990 amendment, it is also instructive to consider the implications and reasonableness of its various possible interpretations. *See American Tobacco Co. v. Patterson*, 456 U.S. 63, 71 (1982) ("Statutes should be interpreted to avoid untenable distinctions and unreasonable results whenever possible.").

### 1. Coverage of Contract Claims

A broad reading of the amendment would encompass not only tort claims, but also contract claims. If a tribe or tribal employee were sued on the basis of an alleged contract entered into while carrying out ISDA functions, and if the phrase "any civil action or proceeding" in the 1990 amendment included such a claim, then it would be "deemed to be an action against the United States" and the United States would be the necessary defendant. For any contract claim in excess of $10,000, exclusive jurisdiction would lie in the Court of Federal Claims. *See* 28 U.S.C. § 1346(a) (1994); 28 U.S.C.A. § 1491 (1994 & West Supp. 1997). As a consequence, a plaintiff would be required to file suit in the Court of Federal Claims in the first instance (or an action filed in a district court could be transferred under 28 U.S.C. § 1631 (1994)), and the United States would defend the claim like any such claim against the federal government. This reading gives rise to a somewhat cumbersome procedure for adjudicating contract claims involving tribal entities—requiring all such claims to be adjudicated in a specialized court in Washington, D.C. rather than locally—and it seems unlikely that Congress intended such a consequence in the absence of any specific legislative evidence that it did.

In addition, a structural anomaly regarding contractors potentially would follow from this broad construction of the amendment. Where a tribe hired a contractor to carry out ISDA functions (as many tribes do), any contract claim that the contractor might have against the tribe apparently would have to be against the United States. But because the 1990 amendment covers "tribal contractors" carrying out ISDA contracts as well as tribes, a subcontractor's breach-of-contract claim against the contractor, at least arguably, also would be deemed an action against the United States.[11] Thus, the contractor would be acting in the role of a government entity vis-a-vis the subcontractor, while acting as a private entity—and one potentially adverse to the government—vis-a-vis the tribe.

---

[11] *Compare FGS Constructors, Inc. v Carlow*, 64 F.3d 1230, 1234–35 (8th Cir 1995) (holding that the term "Indian contractor" in the 1990 amendment is limited to "tribe-related organizations" and does not include private entities), *with* 2 *Pub. Papers of George Bush* 1558, 1559 (1990), *reprinted in* 1990 U S.C C A.N 3283–4, 3283–5 (Nov. 5, 1990) (1990 amendment makes the United States liable for torts of "Tribes, tribal organizations, and contractors").

These interpretive consequences, combined with (1) the difficulty of squaring contract claims with the statute's FTCA language and (2) the lack of any suggestion in the legislative history that Congress intended to cover contract claims, make this broad reading less reasonable than a reading that excludes contract claims.

Finally, regulations promulgated by the Departments of HHS and the Interior interpret the 1990 amendment to apply only to "*tort claims* arising from the performance of self-determination contracts under the authority of the [ISDA]." 25 C.F.R. § 900.205 (1997) (emphasis added).

## 2. Coverage of Non-FTCA Tort Claims

If contract claims are not within the scope of the 1990 amendment, the next question is which tort (or tort-like) claims are within its scope. The provision could extend broadly to constitutional tort claims and other federal claims that are outside the scope of the FTCA (such as Title VII of the Civil Rights Act of 1964). On the other hand, it could be limited to "common law torts"—or more precisely, only those torts that are cognizable under the FTCA. It should be noted in this regard that, although it is often stated that the FTCA covers "common law torts," courts have held that liability under the FTCA is determined by state statutory as well as common law.[12]

If the amendment is construed to cover constitutional tort (or "*Bivens*") claims,[13] then such an action against a "tribal employee" acting within the scope of employment in carrying out an ISDA contract would be "deemed to be an action against the United States." The FTCA, however, does not waive the sovereign immunity of the United States for constitutional tort claims. *Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. at 478. Therefore, a *Bivens* plaintiff would have no recourse against the United States—unless the 1990 amendment itself were a waiver of sovereign immunity. Waivers of the federal government's immunity, however, must be "unequivocally expressed" and "construed strictly in favor of the sovereign." *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33, 34 (1992) (citations and internal quotation marks omitted). The 1990 amendment cannot plausibly be described as an "unequivocal" expression of Congress's intent to waive the government's immunity for constitutional tort claims. Thus, the United States would have an absolute immunity defense to a *Bivens* claim

---

[12] *See Richards v United States*, 369 U.S 1, 6–7 (1962) (referring to "principles of law developed in the common law and refined by statute and judicial decision in the various States"); *Jones v. United States*, 773 F 2d 1002, 1003 (9th Cir 1985) (state "statutory and decisional law governs the determination of the United States' liability under the FTCA"), *Waters v. United States*, 812 F Supp 166, 169 (N D. Cal 1993) (FTCA covers claim under state civil rights statute). It is clear, in any event, that constitutional tort claims and other claims based on federal law are not within the FTCA's waiver of sovereign immunity *See Federal Deposit Ins. Corp v Meyer*, 510 U.S. 471, 478 (1994)

[13] *See Bivens v. Six Unknown Named Agents of Fed Bureau of Narcotics*, 403 U S. 388, 397 (1971) (recognizing cause of action against federal employees in their individual capacities for violations of constitutional rights)

brought under the 1990 amendment. Moreover, the amendment's language evidently would immunize the tribal employee from *Bivens* liability, a result that is anomalous given that federal employees generally are not so immunized.[14] As a result, a *Bivens* plaintiff would be without a remedy.[15] Such a result seems unlikely to have been an intended consequence of the 1990 amendment.

A broad construction of the 1990 amendment similarly might result in elimination of a constitutional remedy under the Indian Civil Rights Act ("ICRA"), 25 U.S.C. §§ 1301–1303 (1994), which provides that tribes "exercising powers of self-government" shall respect certain constitutional rights. 25 U.S.C. § 1302. Although the Supreme Court has held that remedies under the ICRA must be pursued in tribal court, *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 65–66 (1978), a tribe or tribal entity sued for conduct performed under an ISDA contract could reasonably argue that the 1990 amendment, if interpreted to cover "constitutional torts," immunizes it from liability under the ICRA based on such conduct because the action must be "deemed to be an action against the United States."

These implications of a broad construction of the 1990 amendment lend further support to the conclusion that it extends only to tort claims that are actionable under the FTCA.[16]

### III. Representation of Tribes or Tribal Employees Sued for Constitutional Torts

The second question we have been asked is whether the 1990 amendment authorizes representation of tribes or tribal employees sued in their individual capacities for constitutional torts. Because of the amendment's "deemed to be

---

[14] The FTCA expressly removes constitutional claims from the class of claims for which the remedy against the United States is exclusive. *See* 28 U.S C § 2679(b)(2)(A).

[15] It should be noted that it is not entirely clear whether a constitutional tort action against a tribal employee (or an employee of a private contractor) carrying out an ISDA contract would be authorized under *Bivens* and its progeny in the first place The courts of appeals are divided on the question whether a *Bivens* claim may be brought against individuals who are not federal officers or employees, and the Supreme Court has not addressed the question Most courts that have resolved the issue have held that *Bivens* claims may be brought against nonfederal defendants engaged in federal action (or acting under color of federal law) *See Vector Research, Inc. v Howard & Howard Attorneys P.C*, 76 F.3d 692, 698–99 (6th Cir. 1996); *F.E Trotter, Inc v Watkins*, 869 F 2d 1312, 1318 n 3 (9th Cir. 1989) (citing cases); *DeVargas v Mason & Hanger-Silas Mason Co*, 844 F.2d 714, 720 n.5 (10th Cir 1988) (citing cases), *cf. West v Atkins*, 487 U S. 42, 54 (1988) (contractor physician acts under color of state law for purposes of 42 U.S C. § 1983 when treating state inmate).

[16] An additional principle that is potentially relevant in this context is the canon of statutory construction that "statutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit" *Montana v. Blackfeet Tribe of Indians*, 471 U S 759, 766 (1985) A broad construction of the 1990 amendment encompassing claims other than FTCA tort claims would appear to benefit tribes and tribal employees by providing immunization for constitutional tort and possibly contract and other claims as well as common law tort claims It is not at all clear, however, that this result is the one "in favor of the Indians" Many of the plaintiffs in these cases presumably are themselves Indians, and therefore immunizing tribes may not benefit Indians overall, particularly to the extent that remedies under the Constitution and the Indian Civil Rights Act are vitiated entirely. *Cf Northern Cheyenne Tribe v Hollowbreast*, 425 U S 649, 655 n 7 (1976) (canon has no application where "the contesting parties are an Indian tribe and a class of individuals consisting primarily of tribal members") Even if this canon applied, it would not overcome the evidence of legislative history and other *United States v Thompson*, 941 F.2d 1074, 1077–78 (10th Cir. 1991) (canon of construction in favor of Indians is applied when intent of Congress remains unclear after consideration of statutory language and legislative history), *cert denied*, 503 U.S 984 (1992).

an action against the United States'' clause, the question of providing representation for tribes or tribal employees would arise only if the United States were not substituted in a constitutional tort action. We have concluded above that the amendment's language ''any civil action or proceeding involving such claims'' encompasses only tort claims that are cognizable under the FTCA, a category that does not include constitutional tort claims. Thus, the proviso's phrase ''will be defended by the Attorney General'' does not apply to constitutional tort claims and does not authorize representation with respect to such claims.

The only other language in the 1990 amendment that could arguably authorize such representation is the first portion of the provision, which states that ''[w]ith respect to claims resulting from the performance of functions'' under an ISDA contract, tribes are deemed to be part of the federal government and tribal employees are deemed employees of the government ''while acting within the scope of their employment in carrying out the contract or agreement.'' This reference to ''claims,'' however, must be read *in pari materia* with the amendment's subsequent proviso, to make sense of both the statute's structure and the legislative history and purpose. *See Erlenbaugh v. United States*, 409 U.S. 239, 243 (1972). Thus, the phrase ''claims resulting from the performance of functions'' is limited to tort claims that are actionable under the FTCA and does not refer to constitutional tort claims. Accordingly, the 1990 amendment does not authorize, or otherwise address, representation of tribes or tribal employees sued in their individual capacities for constitutional torts.[17]

## IV. Conclusion

For the foregoing reasons, we conclude that the 1990 amendment to the Indian Self-Determination and Education Assistance Act (1) does not cover actions involving claims other than tort claims that are actionable under the Federal Tort Claims Act, and (2) does not authorize representation of tribes or tribal employees sued in their individual capacities for constitutional torts.

DAWN E. JOHNSEN
*Acting Assistant Attorney General*
*Office of Legal Counsel*

---

[17] We do not address whether federal representation of a tribe or a tribal employee sued for a constitutional tort may be authorized by any other statute, such as 28 U S.C § 517 (1994) (allowing the Attorney General to send an officer of the Department of Justice ''to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State'')